| | |
|---|---|
| Nancy Butler, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>Viviant Care Management LLC; Glen Oaks Healthcare LLC, d/b/a "Viviant Healthcare of Shelbyville"; Boulevard Terrace Healthcare LLC, d/b/a "Viviant Healthcare of Murfreesboro"; Camb OP LLC, d/b/a "Viviant Healthcare of Bristol"; and John Doe Corporations I-X.<br><br>        Defendants. | No. _____<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>JURY DEMAND |

Plaintiff, Nancy Butler ("Plaintiff"), individually and on behalf of all others similarly situated, and by and through the undersigned attorneys sues the Defendants, Viviant Care Management LLC (hereafter "Viviant Care Management); Glen Oaks Healthcare LLC, d/b/a "Viviant Healthcare of Shelbyville" (hereafter "Viviant of Shelbyville"); Boulevard Terrace Healthcare LLC, d/b/a "Viviant Healthcare of Murfreesboro" (hereafter "Viviant of Murfreesboro); Camb OP LLC, d/b/a "Viviant Healthcare of Bristol" (hereafter "Viviant of Bristol"); and John Doe Corporations I-X (Collectively "Viviant" or "Defendants").

## PRELIMINARY STATEMENT

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* for Viviant's failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

2.     Plaintiff and the Collective Members are current and former employees of Viviant. Plaintiff brings this action on behalf of herself and all similarly-situated current and former hourly Nurses who were required to perform work for Defendants "off-the-clock," had their time records manipulated (i.e. "shaved") by Defendants, were paid an improper overtime rate, and therefore were not compensated for all earned minimum and overtime wages (hereafter the "Collective Members").[1]

3.     The Collective Members are all current and former hourly Nurses who were employed by Defendants at any time starting three years before this Complaint was filed, up to the present.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs and the Collective Members occurred within this district, Defendants regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

6.     Plaintiff and the Collective Members in their work for Defendants, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

## PARTIES

7.     Viviant offers skilled nursing and rehabilitation services to its patients at no less

---

[1] The term "Nurses" as used herein does not refer to any specific job title and is instead used to describe Viviant employees who performed healthcare services for Defendants while being paid on an hourly basis.

than five facilities located in Tennessee and South Carolina. https://www.viviant.care/contact-us (last visited Feb. 8, 2022).

8.     Plaintiff was employed as a Nurse by Defendants at their facility located at 1101 Glenoaks Rd, Shelbyville, TN, 37160, from approximately December 10, 2019 through the present.

9.     Plaintiff has given her written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached to this Complaint as **Exhibit "A."**

10.     The Collective Members are all current and former Employees who worked for Defendants at any of their facilities at any point during the three years immediately preceding the filing of this action.

11.     At all material times, Defendants operate as a single enterprise organized as a multi-unit business as contemplated by 29 C.F.R. § 779.204(b). Defendants have made the strategic decision to organize each of its facilities as separate corporate entities. Each of these location-specific corporate entities are directed and controlled at the "corporate" level by Viviant Care Management. Viviant Care Management operates as the nerve center of the enterprise. Enterprise-wide practices, policies and decisions are made by Viviant Care Management and then cascaded down to each location specific corporate entity for the common purpose of operating the chain of nursing and rehabilitation facilities in manner which aggregates the profits and/or losses of each specific location across the entire enterprise.

12.     Defendants' nursing facility located at 1101 Glenoaks Rd, Shelbyville, TN 37160 is incorporated as Glen Oaks Healthcare LLC.

3

13.     Defendants' nursing facility located at 1530 Middle Tennessee Blvd, Murfreesboro, TN 37130 is incorporated as Boulevard Terrace Healthcare LLC.

14.     Defendants' nursing facility located at 250 Bellebrook Rd, Bristol, TN 37620 is incorporated Camb OP LLC.

15.     The legal name of Defendants' nursing facility located 8249 Standifer Gap Road, Chattanooga, TN 37421 is unknown to Plaintiff at this time and is subsumed within John Doe Corporations I-X named herein. The legal name of this facility shall be readily available in discovery and Plaintiff may seek leave to amend this Complaint to add the specific name as a party once it becomes known.

16.     The legal name of Defendants' nursing facility located at 1137 Sam Rittenberg Blvd., Charleston, SC 29407 is unknown to Plaintiff at this time and is subsumed within John Doe Corporations I-X named herein. The legal name of this facility shall be readily available in discovery and Plaintiff may seek leave to amend this Complaint to add the specific name as a party once it becomes known.

17.     The legal name of Defendants' nursing facility located at 1800 Eagle Landing Blvd. Hanahan, SC 29406 is unknown to Plaintiff at this time and is subsumed within John Doe Corporations I-X named herein. The legal name of this facility shall be readily available in discovery and Plaintiff may seek leave to amend this Complaint to add the specific name as a party once it becomes known.

18.     Defendants, as part of their operation as a single enterprise, are in the business of buying and selling skilled nursing and rehabilitation facilities. Upon information and belief, additional corporate entities, predecessors, and successors which have operated as units within Defendants' single enterprise are likely to be identified in discovery. Such entities, the specific

4

names of which are unknown at this time, are subsumed within John Doe Corporations I-X named herein. Plaintiff may seek leave to amend this Complaint to add a specific name as a party once it becomes known.

19.     Defendants are Plaintiff's and the Collective Members' "single employer" subject to joint and several liability under the FLSA. "In determining whether to treat two entities as a single[, "integrated"] employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *E.g. Lee v. S&E Flag Cars, LLC*, Case No. 2:14-cv-176, 2022 U.S. Dist. LEXIS 1840 *9 (W.D. Ky. Jan. 5, 2022) citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-994 (6th Cir. 1997).

20.     Defendants are Plaintiff's and the Collective Members' "joint employer" subject to joint and several liability under the FLSA. whether a "joint employer" relationship exists under the FLSA "depends upon all the facts in the particular case." *Keeton v. Time Warner Cable*, No. 2:09-CV-1085, 2010 U.S. Dist. LEXIS 135544, 2010 WL 2076813, at *2 (S.D. Ohio May 24, 2010) (citing 29 C.F.R § 791.2(a); and *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No.1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991)) (the determination of "joint employer [status] is essentially a factual issue"). While the Sixth Circuit has not endorsed a bright-line test for joint employer status, the Sixth Circuit has considered "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership" as facts relevant to the joint employer inquiry. *Int'l Longshoremen's Ass'n,* 927 F.2d at 902.

21.     All of the Defendants present themselves to the public as one unified company – "Viviant Healthcare." *See* https://www.viviant.care/ (last visited Feb. 8, 2022).

5

22.     All of Defendants' employees, including Plaintiff, are managed by "corporate" i.e., Viviant Care Management LLC.

23.     Upon information and belief, each location specific corporate entity identified herein is controlled, operated and directed by Viviant Care Management, LLC.

24.     Defendants have a unified leadership team which directs and controls the work of all Defendants' employees, including Plaintiff, regardless of which specific location any particular employee may work at.

25.     All corporate entities within Defendants' enterprise known to Plaintiff at this time share a common principal place of business as registered with the Tennessee Secretary of State which is 525 Chestnut Street, Suite 102, Cedarhurst, NY 11516.

26.     Upon information and belief, all Defendants share common ownership.

27.     Defendants jointly utilize a third-party employee management firm called OneSource Employee Management to perform Defendants' human resources and payroll functions in relation to Plaintiff and the Collective Members. OneSource offers its clients, including Defendants, "a contractual relationship called 'co-employment' with you, becoming the 'employer of record' and handling things like taxes and benefits while you remain the 'worksite employer' and handle day-to-date management as usual." https://onesourceem.com/ (last visited Sept. 30, 2022)

28.     The manner in which Plaintiff and the Collective Members would be paid, including the decision not to pay Plaintiff and the Collective Members all minimum and overtime wages required by law as described herein, was not determined by any one Defendant and was instead determined globally by all Defendants.

29.     The reduction in labor costs and increase in profits resulting from the failure to pay Plaintiff and the Collective Members all minimum and overtime wages required by law as described herein were not captured by any one Defendant and were instead shared and enjoyed by all Defendants.

30.     Upon information and belief, all Defendants pool their resources, assets and liabilities to be shared equally across all Defendants.

31.     Upon information and belief, the profits and or losses, generated by the operation of any single facility are shared equally across all Defendants.

32.     Any of Plaintiff's superiors had the authority to direct and control Plaintiff's work regardless of which particular Viviant location any of Plaintiff's superiors may have been based.

33.     None of Defendants are publicly traded. Facts relevant to Defendants' liability as a "single employer" and "joint employer" are of limited availability to the public and additional relevant information will come to light through the process of discovery.

34.     At all relevant times, Plaintiff and the Collective Members were "employees" of Defendants as defined by the FLSA 29 U.S.C. § 201, *et seq.*

### FACTS PERTAINING TO UNPAID WAGES

35.     At all material times, Plaintiff worked for Defendants in a full-time position, was not on a salary basis as contemplated by the FLSA and was instead paid on an hourly basis.

36.     At all material times, Plaintiff was non-exempt from the FLSA's minimum wage and overtime requirements.

37.     The Collective Members are likewise hourly employees of Defendants who are non-exempt from the FLSA's minimum wage and overtime.

#### *Unpaid Meetings*

38.     Defendants regularly require Plaintiff and the Collective Members to attend weekly and monthly meetings.

7

39.     However, Defendants only pay Plaintiff and the Collective Members for these meetings if the meeting occurs during Plaintiff's and Collective Members' regularly scheduled shifts.

40.     In other words, if a meeting is to be held on a day in which Plaintiff and the Collective Members are not on the schedule, Plaintiff and the Collective Members must come into work for the meeting, but they are not paid by Defendants for this time.

41.     These unpaid mandatory meetings typically last between one and one-half hours every week.

42.     Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff and the Collective Members for time spent attending meetings outside of their normally scheduled shift would violate the minimum wage and overtime requirement of the FLSA.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

### *Unpaid COVID-19 Screening and Testing*

43.     On March 12, 2020, Tennessee Governor, Bill Lee declared a state of emergency regarding the COVID-19 pandemic as states across the country took similar action.

44.     Shortly thereafter, Defendants implemented COVID-19 screening and testing protocols at all of their facilities for all of their employees – including those of Plaintiff and the Collective Members.

45.     As part of Defendants' COVID-19 screening procedures, employees, including Plaintiff and the Collective Members, are required to wait to be temperature tested. Plaintiff and the Collective Members are then required to complete a health and wellness questionnaire which must then be recorded for Defendants' recordkeeping and compliance. All of this occurs prior to

Plaintiff and the Collective Members entering the facility and clocking in and Defendants fail to compensate Plaintiff and the Collective Members whatsoever for such time.

46. Such screenings take 5 to 10 minutes, and occur once at beginning of every shift, and once again when Plaintiff and the Collective Members return from their meal break.

47. As part of Defendants' COVID-19 testing procedures, employees, including Plaintiff and the Collective Members, are required to be tested at one of Defendants' facilities a minimum of once per week. Depending on positive testing rates, Defendants at times requires its employees, including Plaintiff and the Collective Members to be tested multiple times per week. There have been weeks where they had to test every day. As a result of Defendants' testing requirements, Defendants' employees, including Plaintiff and the Collective Members are often required to report to one of Defendant's facilities to be tested on days in which Plaintiff and the Collective Members are not otherwise scheduled to work. In these instances, Defendants fail to compensate Plaintiff and the Collective Members whatsoever for such time.

48. Ensuring Defendants' patients health and wellness is Plaintiff and the Collective Members' primary job duty in their work for Defendants and the COVID-19 screening and testing that Plaintiff and the Collective Members have undergone is integral to their work for Defendants.

### Time Shaving

49. Defendants have a common enterprise-wide practice of underpaying Plaintiff and the Collective Members by manipulating the time records that keep for Plaintiff and the Collective Members – a practice also known as "time shaving."

50. Defendants will regularly go into their timekeeping software system and make edits to Plaintiff's and the Collective Members' actual time worked to reflect a lesser amount of time worked.

9

51.     For example, if any employee on a busy shift does not take a meal break, Defendants will often go back into the system and insert a thirty-minute break that was not taken, thereby "shaving" the amount of time actually worked by Plaintiff and the Collective Members and undercompensating them for the same.

52.     Moreover, on all shifts, Defendants permit Plaintiff and the Collective Members to take only a thirty-minute lunch, however Defendants deduct a full hour for all meal breaks taken by Plaintiff and the Collective Members.

53.     Defendants knew that – or acted with reckless disregard as to whether – their time record manipulation would violate the minimum wage and overtime requirements of the FLSA. As such, Defendants' conduct constitutes a willful violation of the FLSA.

*Improper Overtime Rate*

54.     Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

55.     Defendants pay Plaintiff and the Collective Members certain non-discretionary bonuses, but Defendants do not include these non-discretionary bonus payments in Plaintiff's and the Collective Members' regular rates of pay for the purposes of computing overtime.

56.     For example, Defendants pay Plaintiff and the Collective Members a non-discretionary flat-rate bonus payment of each non-scheduled shift that Plaintiff and the Collective Members agree to work.

57.     Plaintiff earned one such bonus, denoted "BONUS PICKUP S", in the amount of $105.00 for the pay period ending on November 20, 2021. However, Defendants did not include this bonus payment in Plaintiff's regular rate of pay for the purpose of computing the proper overtime rate paid to Plaintiff during that pay period.

58.     Defendants knew that – or acted with reckless disregard as to whether – their overtime rate miscalculations would violate the overtime requirements of the FLSA.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiffs and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

60.     Plaintiff and the Collective Members bring this action pursuant to 29 U.S.C. § 216(b) on their own behalf and as a representative of individuals similarly situated who are current or former hourly employees employed by Defendants.

61.     Defendants similarly subjected Plaintiff and the Collective Members to their policy and practice of not paying these employees for time spent attending meetings in violation of 29 U.S.C. § 206(a) and 207(a).

62.     Defendants similarly subjected Plaintiff and the Collective Members to their policy and practice of failing to pay Plaintiff and the  Collective Members whatsoever the time they spent submitting to Defendants' COVID-19 screening and testing procedures in violation of 29 U.S.C. §§ 206(a) and 207(a).

63.     Defendants similarly subjected Plaintiff and the Collective to their policy and practice of "time shaving" as described herein in violation of 29 U.S.C. §§ 206(a) and 207(a).

64.     At all relevant times, Plaintiff and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' company-wide decisions, policies, plans, common programs, practices, procedures, protocols, routines, and rules including the minimum wage and overtime violations described herein.

65.     Plaintiff's claims stated in this complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff are identical or substantially similar.

66.     The Collective Members perform or have performed the same or similar work as Plaintiff.

67.     Defendants' failure to pay full minimum wage or overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

68.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all of the Collective Members.

69.     Plaintiff brings her FLSA minimum wage and overtime claims as a collective action on behalf of the following Collective:

> **The Collective Members are all of Defendants' current and former Nurses – or those performing similar duties under a different title – who were paid on an hourly basis, starting three years before this lawsuit was filed to the present.**

12

62. Defendants are aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members an all minimum wages and overtime wages.

63. Defendants' unlawful conduct has been widespread, repeated, and consistent.

64. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

65. Upon information and belief, the individuals similarly situated to Plaintiff includes thousands of current and former employees of Defendants. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Defendants' possession, custody, or control, but it can be readily ascertained from their employment records.

66. Notice can be provided to the Collective Members by First Class Mail to the last address known to Defendants, via email at the last known email address known to Defendants, by text message to the last known telephone number known to Defendants, and by workplace posting at each of Defendants' facilities.

**COUNT ONE: UNPAID MEETINGS**

67. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

68. At all relevant times, Plaintiff and the Collective Members were paid on an hourly basis.

69. Defendants regularly require Plaintiff and the Collective Members to attend weekly and monthly meetings.

70. However, Defendants only pay Plaintiff and the Collective Members for these meetings if the meeting occurs during Plaintiff's and Collective Members' regularly scheduled shifts.

13

71.     In other words, if a meeting is to be held on a day in which Plaintiff and the Collective Members are not on the schedule, Plaintiff and the Collective Members must come into work for the meeting, but they are not paid by Defendants for this time.

72.     These unpaid mandatory meetings typically last between one and one-half hour every week.

73.     Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff and the Collective Members for time spent attending meetings outside of their normally scheduled shift would violate the minimum wage and overtime requirements of the FLSA.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

74.     Although at this stage, Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

75.     As a result of Defendants' failure or refusal to pay Plaintiff and the Collective Members for all time spent attending meetings as described herein, Defendants violated 29 U.S.C. §§ 206 and 207. Plaintiff and the Collective Members are therefore entitled to compensation for al unpaid minimum and overtime wages as described herein, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

14

## COUNT TWO: UNPAID COVID-19 SCREENING AND TESTING

76.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

77.     At all relevant times, Plaintiff and the Collective Members were paid on an hourly basis.

78.     On March 12, 2020, Tennessee Governor, Bill Lee declared a state of emergency regarding the COVID-19 pandemic as states across the country took similar action.

79.     Shortly thereafter, Defendants implemented COVID-19 screening and testing protocols at all of their facilities for all of their employees – including Plaintiff and the Collective Members.

80.     As part of Defendants' COVID-19 screening procedures, employees, including Plaintiff and the Collective Members, are required to wait to be temperature tested. Plaintiff and the Collective Members are then required to complete a health and wellness questionnaire which must then be recorded for Defendants' recordkeeping and compliance. All of this occurs prior to Plaintiff and the Collective Members entering the and clocking in and Defendants fail to compensate Plaintiff and the Collective Members whatsoever for such time.

81.     Such screenings take 5 to 10 minutes, and occur once at beginning of every shift, and once again when Plaintiff and the Collective Members return from their meal break.

82.     As part of Defendants' COVID-19 testing procedures, employees, including Plaintiff and the Collective Members, are required to be tested at one of Defendants' facilities a minimum of once per week. Depending on positive testing rates, Defendants at times requires its employees, including Plaintiff and the Collective Members to be tested multiple times per week. There have been weeks where they had to test every day. As a result of Defendants' testing

15

requirements, Defendants' employees, including Plaintiff and the Collective Members are often required to report to one of Defendant's facilities to be tested on days in which Plaintiff and the Collective Members are not otherwise scheduled to work. In these instances, Defendants fail to compensate Plaintiff and the Collective Members whatsoever for such time.

83.     Ensuring Defendants' patients health and wellness is Plaintiff and the Collective Members' primary job duty in their work for Defendants and the COVID-19 screening and testing that Plaintiff and the Collective Members have undergone is integral to their work for Defendants.

84.     Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff and the Collective Members for time spent during COVID-19 screening and testing protocols violate the minimum wage and overtime requirements of the FLSA.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

85.     Although at this stage, Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

86.     As a result of Defendants' failure or refusal to pay Plaintiff and the Collective Members for all time spent during Defendants' COVID-19 screening and testing protocols as described herein, Defendants violated 29 U.S.C. §§ 206 and 207. Plaintiff and the Collective Members are therefore entitled to compensation for all unpaid minimum and overtime wages described herein, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

16

## COUNT THREE: TIME SHAVING

87.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

88.     At all relevant times, Plaintiff and the Collective Members were paid on an hourly basis.

89.     Defendants have a common enterprise-wide practice of underpaying Plaintiff and the Collective Members by manipulating the time records that keep for Plaintiff and the Collective Members – a practice also known as "time shaving."

90.     Defendants will regularly go into their timekeeping software system and make edits to Plaintiff's and the Collective Members' actual time worked to reflect a lesser amount of time worked.

91.     For example, if any employee on a busy shift does not take a meal break, Defendants will often go back into the system and insert a thirty-minute break that was not taken, thereby "shaving" the amount of time actually worked by Plaintiff and the Collective Members and undercompensating them for the same.

92.     Moreover, on all shifts, Defendants permit Plaintiff and the Collective Members to take only a thirty-minute lunch, however Defendants deduct a full hour for all meal breaks taken by Plaintiff and the Collective Members.

93.     Defendants knew that – or acted with reckless disregard as to whether – their time record manipulation would violate the minimum wage and overtime requirements of the FLSA. As such, Defendants' conduct constitutes a willful violation of the FLSA.

94.     Although at this stage, Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective

17

Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

95.     As a result of Defendants' improper manipulation of Plaintiff's and the Collective Members' time records as described herein, Defendants violated 29 U.S.C. §§ 206 and 207. Plaintiff and the Collective Members are therefore entitled to compensation for all unpaid minimum and overtime wages described herein, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT FOUR: IMPROPER OVERTIME RATE**

96.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

97.     At all relevant times, Plaintiff and the Collective Members were paid on an hourly basis.

98.     Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their **regular rate of pay** for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

99.     Defendants pay Plaintiff and the Collective Members certain non-discretionary bonuses, but Defendants do not include these non-discretionary bonus payments in Plaintiff's and the Collective Members' regular rates of pay for the purposes of computing overtime.

18

100.    For example, Defendants pay Plaintiff and the Collective Members a non-discretionary flat-rate bonus payment of each non-scheduled shift that Plaintiff and the Collective Members agree to work.

101.    Plaintiff earned one such bonus, denoted "BONUS PICKUP S", in the amount of $105.00 for the pay period ending on November 20, 2021. However, Defendants did not include this bonus payment in Plaintiff's regular rate of pay for the purpose of computing the proper overtime rate paid to Plaintiff during that pay period.

102.    Defendants knew that – or acted with reckless disregard as to whether – their overtime rate miscalculations would violate the overtime requirements of the FLSA.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

103.    Although at this stage, Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

104.    As a result of Defendants' improper calculation of Plaintiff's and the Collective Members' overtime rates as described herein, Defendants violated 29 U.S.C. § and 207. Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff and the Collective Members request that this Court enter Judgment against Defendants in their favor:

    a.   Awarding Plaintiff and the Collective Members all unpaid minimum wage and overtime compensation as detailed herein.

    b.   Awarding Plaintiff and the Collective Members liquidated damages in an amount equal to all unpaid minimum and overtime wages;

    c.   Awarding Plaintiff and the Collective Members' reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. § 216(b);

    d.   Awarding Plaintiff and the Collective Members pre-judgment interest, at the highest legal rate, on all amounts set forth in subsections (a) and (b) above from the date of the payment due for that pay period until paid in full;

    e.   Granting a reasonable service award to Plaintiff; and

    f.   For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 4th day of October 2022.

s/ *Anne Bennett Hunter*
Anne Bennett Hunter, TN BPR# 022407
Hunter Law Firm
101 Creekside Crossing, Suite 1700-307
Brentwood, TN 37027
Phone:  (615) 592-2977
Email: anne@hunteremploymentlaw.com


s/ *James L. Simon*
James L. Simon (*pro hac vice forthcoming*)
SIMON LAW CO.
5000 Rockside Road
Liberty Plaza Building – Suite 520
Independence, OH 44131
Phone: (216) 816-8696
Email: james@simonsaypay.com